**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-03597-TPO

MAYLEN GEHRET,

    Plaintiff,

v.

ALON ALEXANDER and
OREN ALEXANDER,

    Defendants.

---

**MOTION TO STAY THE PROCEEDINGS AND FOR A 21-DAY EXTENSION OF TIME TO RESPOND TO THE COMPLAINT AFTER EXPIRATION OR DENIAL OF ANY STAY**

---

Defendants, Alon Alexander and Oren Alexander, through counsel, Jeffrey S. Pagliuca, pursuant to the Fifth and Sixth Amendments to the United States Constitution, Rule 6(b) of the Federal Rules of Civil Procedure, and D.C.Colo.LCivR 6.1, request that the Court stay these proceedings until twenty-one (21) days after the resolution of criminal charges against the Defendants in *USA v Alon Alexander, et al.*, 1:24-cr-00676-VEC (S.D.N.Y.). In the event the Court does not grant the requested stay, Defendants alternatively request that the deadline to answer or otherwise respond to Plaintiff's Complaint be set for twenty-one (21) days after the denial. As grounds, they state:

**Certificate of Conferral**

Undersigned counsel conferred with counsel for Plaintiff, Julia Thompson, by email and phone. Ms. Thompson objects to the relief requested but indicated that Plaintiff's position is that the Defendants "should file their Answers and/or any other responsive pleading within 3 weeks of filing the Motion for Stay."

## I.  BACKGROUND

The Complaint alleges, *inter alia*, that more than eight years ago, Defendant Alon Alexander sexually assaulted the Plaintiff in Aspen, Colorado. Compl. ¶¶ 13, 45. According to the Complainant, when Plaintiff was 17 years old, she and some friends were clubbing and went to "Bootsy Bellows" a "[s]peak-easy style lounge which features quality cocktails, good music, wild puppetry, and live performances." *Id.* ¶¶ 13-15; *see* https://www.facebook.com/BootsyBellowsAspen/. After gaining entrance to the club, Plaintiff says that she had a "chance meeting" with the Defendants. Compl. ¶ 1. She claims that Alon Alexander "gave her alcoholic drinks" that might have "also contained drugs." *Id.* ¶ 25. And, "near closing time" she and her friends were invited to an "after party" at The Little Nell, a well-known, high-end Aspen hotel. *Id.* ¶ 31. She assumed that the after party was in a suite of rooms. *Id.* ¶¶ 33-34.

Plaintiff alleges that while at the hotel she was sexually assaulted by Defendant Alon Alexander and that Defendant Oren Alexander conspired with Alon to accomplish this crime. *Id.* ¶¶ 57-76.

Alon and Oren Alexander were indicted ("the indictment") on December 10, 2024. The pre-indictment investigative process followed a familiar playbook. In 2022, a prospective plaintiff first offered to quietly settle sex-assault allegations against the Defendants, (high-net-worth individuals whose business would be harmed by the adverse publicity) for an extraordinary amount of money. When the Defendants did not acquiesce, a lawsuit with incendiary allegations followed. This lawsuit begat multiple Jane Doe lawsuits—stalking horses for the FBI—which issued warrants and subpoenas

2

for information related to the Defendants. *See*

https://www.vanityfair.com/style/story/alexander-brothers-rape-allegations.

By the time this Plaintiff filed her Complaint, various, similar, iterations of her allegations had been made in other civil lawsuits, media reports, and the indictment.

## II.   THE INDICTMENTS

The indictment was filed in the U.S. District Court for the Southern District of New York on December 11, 2024. It alleged, in Count One, that the Defendants conspired to commit sex trafficking in violation of 18 U.S.C.§ 1594(c). Counts Two and Three alleged the Defendants committed sex trafficking by force, fraud, or coercion in violation of 18 U.S.C.§ 1591(a)(b)(1) and (2).

The indictment has been twice superseded, most recently on May 8, 2025, to add additional alleged victims and charges, including Count Five, sex trafficking of a minor by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a)(b)(1), (b)(2), and (2). The conspiracy allegation, Count One, remains unchanged.

## III.   CONSPIRACY TO COMMIT SEX TRAFFICKING

Count One of the indictment alleges a conspiracy that encompasses multiple alleged means, lasting from "at least" 2009 through, apparently, 2021 involving "dozens of [unidentified] female victims." Second Superseding Indictment, ¶¶ 1, 4. It's alleged the Defendants "worked together and with others known and unknown" to sexually assault women. *Id.* ¶ 1. The conspiracy included the Defendants encountering and choosing "their victims by chance." *Id.* As alleged, the Defendant's "[o]ften" drugged their victims. *Id.* The "scheme" included "domestic and international travel and accommodations," *id.* ¶ 2; invitations to parties, *id.* ¶ 5(a); social connections, *id.* ¶ 5(c);

3

the surreptitious drugging of drinks, *id.* ¶ 5(g); physical restraint, *id.* ¶ 5(h); and as alleged in paragraph 6 of the Second Superseding Indictment:

> The agreement between ALON ALEXANDER, OREN ALEXANDER, and TAL ALEXANDER, the defendants, encompassed numerous other acts of sexual violence in addition to sexual assaults during planned trips and events. On numerous occasions, the ALEXANDER BROTHERS drugged and raped or sexually assaulted female victims they encountered by chance, including women they met at bars and nightclubs, social events, and on dating applications. The ALEXANDER BROTHERS similarly carried out these rapes and sexual assaults by, among other things, drugging and incapacitating victims, taking victims to isolated locations, physically restraining victims while raping and sexually assaulting them alone, together, and with other men, and ignoring victims' explicit demands to stop.

The indictment references six unnamed alleged victims but is not limited to those six individuals. *See id.* ¶ 7. Rather, the conduct alleged in Count One includes "but is not limited to" unnamed Victims 1-6. *Id.*

## IV.    STATUS OF THE PROSECUTION

Messers. Alexander were arrested in Florida on December 11, 2024. They were held, without bail, and transported to New York where they remain in pre-trial custody, still with no bail, at the Metropolitan Detention Center, which is infamously understaffed, run down, and a difficult place to schedule visits with detainees. *See* "Inside the Brooklyn Federal Jail where Sean 'Diddy' Combs is Locked up: Violence, Squalor and Death," https://apnews.com/article/sean-combs-diddy-federal-prisons-jails-mdc-brooklyn-8c910839adf3ac54a8adc8d7cb3f0b79.

The Defendants have entered pleas of not guilty, and the case is set for trial on January 5, 2026. If convicted, the Defendants face a minimum of 15 years up to life in prison.

4

## V.   COMPARING THE COMPLAINT AND THE INDICTMENT

Although the Plaintiff is not specifically named as one of the alleged victims in the indictment, her complaint fits squarely into the conspiracy alleged by Count One.

| **Complaint's Allegations** | **Superseding Indictment's Allegations** |
|---|---|
| Occurred in 2017 ¶ 1 | From at least 2009-2021 ¶ 7 |
| Meeting happened by chance ¶ 1 | Chose victims by chance ¶¶ 1, 6 |
| May have been drugged ¶¶ 25, 29 | Drugged their victims ¶¶ 1, 5(g), 6 |
| Act of sexual assault and rape ¶¶ 44-45 | Acts Sexual assault and rape ¶¶ 1-2, 4, 5(h), 6 |
| Invited to party ¶ 31 | Invited to events and parties ¶¶ 5(a), (b), (d), (e) |
| Met at bar/nightclub ¶¶ 15-19 | Sexually assaulted women they met at bars or nightclubs ¶ 6 |
| Told about mutual acquaintance ¶ 22 | Used social connections to lure and entice ¶ 5(c) |
| Felt physically helpless ¶¶ 37, 39 | Prevented from fighting back or escaping ¶¶ 1, 5(a), (6) |
| Was restrained ¶¶ 39-41 | Restrained victims ¶¶ 5(h), 6 |
| Group sexual assault ¶¶ 48-51 | Group sex assault ¶¶ 1, 5, 6 |
| Used fraud or deception ¶¶ 24, 30, 31, 34 | Used fraud or deception ¶¶ 7-9, 11-14 |

As this comparison shows, the allegations in the Complaint, drafted and filed after the indictment, substantially mirror the indictment. In the criminal case, the Government may argue either at trial or at any sentencing that the Plaintiff is a victim. *See United States v. Casile*, No. CRIM. 09-668, 2011 WL 1755701, at *8 (E.D. Pa. May

5

9, 2011) ("The indictment need not name the victim in the charge, as long as the defendant had notice of the identity of the victim proven at trial."), *aff'd*, 490 F. App'x 470 (3d Cir. 2012); *see also United States v. Egu*, 379 F. App'x 605, 608 (9th Cir. 2010) (affirming consecutive sentences imposed because defendant "victimized multiple people, including some not named in the indictment"); *United States v. Angelica*, 859 F.2d 1390, 1395 (9th Cir. 1988) (finding no error where trial court based "restitution order on victims not charged in the indictment"). Or, the Government may claim that the Plaintiff's allegations are admissible as *res gestae* evidence of Count One and FRE 404(b) evidence regarding Counts Two through Six.

Regardless of what position the Government takes *vis a vis* the Plaintiff's status, should this case proceed without a stay, Defendants will be, other than by assertion of their Fifth Amendment privilege, unable to answer the Complaint, respond to requests for admissions, answer written discovery, produce documents, or sit for depositions. Moreover, with their criminal trial only months away, Defendants will be forced to expend substantial financial, personal, and emotional resources to defend claims made eight years late. Because of their custodial status in New York, Defendants will be denied the ability to assist counsel in person here in Colorado, undermining their timely review of evidence and participation in the civil discovery process, such as attending the depositions of potential witnesses, including Plaintiff.

## VI.   APPLICABLE LEGAL PRINCIPLES

Trial courts have discretion to stay civil cases pending the resolution of a parallel criminal proceeding. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009). The party seeking the stay must show a case of hardship and

6

inequity that warrants the stay. *Id.* The court must consider the extent to which the party's Fifth Amendment rights are implicated if the stay is denied. *Id.* Courts have developed six factors to guide the analysis:

(1) the extent to which the issues in the criminal case overlap with those presented in the civil case;

(2) the status of the case, including whether the defendants have been indicted;

(3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;

(4) the private interests of and burden on the defendants;

(5) the interests of the courts; and

(6) the public interest.

*Windham for Marquis Props., LLC v. Snyder,* Case No. 2:18-cv-00063-RJS-EJF, 2018 WL 4100512, at *3 (D. Utah Aug. 28, 2018) (quoting *M.D. Diet Weight Loss & Nutrition Clinic, L.C. v. Absolute Weight Loss & Nutrition Ctr., LLC*, No. 2:05-cv-605, 2006 WL 2471524, at *1 (D. Utah Aug. 24, 2006)).

Taken together, the factors support a stay here.

### A.  Overlap of Issues

The extent of overlap is the "most important factor in ruling on a motion to stay." *S.E.C. v. Nicholas,* 569 F. Supp. 2d 1065, 1070 (C.D.Cal. 2008) (alterations omitted) (quoting Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 203); *see also Berreth v. Frazee*, No. 19-CV-00027-PAB-KMT, 2019 WL 10250759, at *2 (D. Colo. Apr. 1, 2019) (quoting *Nicholas* on this point).

Substantial overlap exists between the indictment and Plaintiff's Complaint. The substance of the alleged illegal conduct is the same, sexual assault. The manner and means is the same, invitation to a party, followed by alcohol and drugs, followed by a forced sexual assault. The alleged assailants are the same, these Defendants, and the time frame is the same, 2017. The indictment's conspiracy allegations are expressly ***not*** limited to the six unnamed women. More importantly, the Complaint's allegations squarely and forcefully impact these Defendants' rights against self-incrimination. Plaintiff's counsel will undoubtably ask the Defendants about the indictment's allegations. The Plaintiff will ask for various records, the production of documents, and demand that the Defendants produce vast amounts of information unavailable to the Government in a criminal prosecution. Plaintiff will seek to depose the Defendants, their family members, business associates, and friends. Should the Defendants exercise their rights against self-incrimination, the Plaintiff will seek judgment based not on the truthful, tested merits of her claims but on adverse inferences drawn from Defendants' exercise of their rights. Hardly a level playing field.

The overlap is substantial, and this factor favors a stay of these proceedings.

**B.  Status of Case**

"A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations." *Trs. of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp.

1134, 1139 (S.D.N.Y. 1995). The fact that the Defendants have been indicted is critical because it increases the risk that allowing the civil case to proceed will prejudice the criminal case. *S.E.C. v. Dresser Indus., Inc.,* 628 F.2d 1368, 1375–76 (D.C. Cir. 1980).

Numerous courts within the Tenth Circuit have granted civil stays in the post-indictment context. *See Obispo v. Ishkiret's Grp., LLC*, No. CIV-24-889-D, 2024 WL 5056643, at *5 (W.D. Okla. Dec. 10, 2024); *Curry v. Gonzales*, No. CIV 20-0116 RB/SCY, 2021 WL 1060770, at *3 (D.N.M. Mar. 18, 2021); *Berreth*, 2019 WL 10250759, at *3; *Hilda M. v. Brown*, No. 10-CV-02495-PAB-KMT, 2010 WL 5313755, at *6 (D. Colo. Dec. 20, 2010); *see also In re Worldcom, Inc. Sec. Litig.*, Nos. 02 Civ. 3288(DLC), 02 Civ. 4816(DLC), 2002 WL 31729501, at *9; *Volmar Distrib., Inc. v. New York Post Co. Inc.*, 152 F.R.D. 36, 42 (S.D.N.Y. 1993); *Midas Intern. Corp. v. G.V. & G Trans. Servs.*, No. 87 C 2180, 1987 WL 18916, at *2 (N.D.Ill. Oct. 19, 1987); *Fidelity Funding of California v. Reinhold*, 190 F.R.D. 45, 48-49, 52-53 (E.D.N.Y. 1997) (staying the civil case against the defendant who was under indictment while denying a stay as to his unindicted civil co-defendant).

The status of the case, particularly the Defendants' indictment, weighs in favor of a stay here.

### C.     Plaintiffs' Interests

Some plaintiffs have an interest in the "expeditious resolution" of their case. *Transworld*, 886 F. Supp. at 1140. Here, however, according to Plaintiff, the allegations underlying the Complaint occurred more than eight years ago. The Complaint offers no explanation for the significant delay in lodging these claims. The timing suggests not an interest in an expeditious resolution but, rather, an opportunistic

9

interest in exploiting the indicted Defendants' vulnerable legal and custodial positions. Importantly the criminal trial is scheduled to begin in less than eight months. Discovery in this case will last more than eight months, and it is unlikely that any trial would occur here until 2027, after the conclusion of the criminal case. Should the circumstances surrounding the criminal trial change the Court can certainly revisit the scope and length of any stay.

This factor does not counsel against Defendants' stay request.

### D. Interests of the Defendants

The Defendants have a significant interest in "avoiding the quandary of choosing between waiving their Fifth Amendment rights or effectively forfeiting the civil case." *Transworld*, 886 F. Supp. at 1140. This important interest "trump[s]" Plaintiff's "legitimate interest in the expeditious resolution of [her] case." *Id.* The Defendants also have legitimate interests in being able to participate in the defense of these allegations, which they deny. It is impossible for these Defendants, who are currently detained in a facility (1,786 miles from Denver) that epitomizes cruel and unusual punishment under the Eighth Amendment, to meaningfully participate in this case.

This factor strongly supports staying these proceedings.

### E. Interests of the Court

This factor also weighs strongly in favor of a stay. Of course, "[t]he Court has a strong interest in keeping litigation moving to conclusion without unnecessary delay." *In re CFS-Related Sec. Fraud Litig.*, 256 F. Supp. 2d 1227, 1241 (N.D. Okla. 2003). However, resolution of the criminal case may (1) increase the possibility of settlement of the civil case, and (2) "may reduce the scope of discovery in the civil case

10

[as] the evidence gathered during the criminal prosecution can later be used in the civil action," *Transworld*, 886 F. Supp. at 1140. Litigation over the Complaint's allegations will consume an enormous amount of this Court's limited resources. There will be legitimate disputes about the scope of discovery, compelled deposition notices by the Defendants of the (at least) six alleged victims in the indictment, spoliation, discovery around the unnamed witnesses, medical privilege waivers, 702 experts, and damages. The Court will need to rule on issues related to statutes of limitation, other affirmative defenses, and motions under FRE 412 and FRE 404(b). Most, if not all these issues will be litigated in the criminal case. Presumably, the accusers will testify and may not need to be deposed. Investigating agents will also testify, which again, could obviate their depositions. Depending on the outcome of the trial, principles of issue and claim preclusion may apply and allow for the avoidance of protracted litigation.

The interest of the Court thus supports a stay.

### F.   Public Interest

The overwhelming public interest is to provide all parties with a fair trial. The public interest is not served by rushing to resolve a litigant's eight-year-old claims brought only after the Defendants are indicted and unable to meaningfully respond. Moreover, "[b]ecause of the overlapping issues in the criminal and civil cases, the criminal prosecution will serve to advance the public interests at stake here." *Transword*, 886 F. Supp. at 1140 (citing *Volmar Distrib.*, 152 F.R.D. at 40). The allegations against these Defendants have been widely reported in detail. The criminal trial will receive daily coverage by most media outlets. The public will not want for

information about the core allegations, and a slight delay of this matter will not negatively impact any legitimate interests.

The public interest supports a stay.

## VII.   CONCLUSION

This Court should stay these proceedings until twenty-one (21) days after resolution of the overlapping criminal matter. Alternatively, the Defendants request that the deadline to answer or otherwise respond to Plaintiff's Complaint be set for twenty-one (21) days after the denial of this stay request.

Dated:   May 16, 2025

Respectfully submitted,

*s/ Jeffrey S. Pagliuca*
Jeffrey S. Pagliuca, #12462
Jacob B. McMahon, #48784
HADDON, MORGAN AND FOREMAN, P.C.
945 N. Pennsylvania Street
Denver, CO 80203
Tel:  303.831.7364
Fax: 303.832.2628
jpagliuca@hmflaw.com;
jmcmahon@hmflaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2025, I electronically filed the foregoing *Motion to Stay the Proceedings and for a 21-Day Extension of Time to Respond to the Complaint After Expiration or Denial of Any Stay* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record. Pursuant to D.C.Colo.LCivR 6.1(c), Defendants will be served by email through their attorney of record in *United States v. Alexander*, 1:24-CR-00676-VEC.

Jason Goldman
The Law Offices of Jason Goldman
275 Madison Avenue, 35th Floor
New York, NY 10016
*jg@jasongoldmanlaw.com*

             *s/ Holly Rogers*