IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-03597-TPO

MAYLEN GEHRET,

    Plaintiff,

v.

ALON ALEXANDER and
OREN ALEXANDER

    Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STAY THE PROCEEDINGS AND FOR A 21-DAY EXTENSION OF TIME TO RESPOND TO THE COMPLAINT AFTER EXPIRATION OR DENIAL OF ANY STAY**

Plaintiff, Maylen Gehret, by her attorneys, Leventhal Puga Braley P.C., hereby submits her Response to Defendants' Motion to Stay the Proceedings and For A 21-Day Extension of Time to Response to The Complaint After Expiration or Denial of Any Stay, and states as follows:

**BACKGROUND**

On January 27, 2017, Plaintiff Maylen Gehret, who was just 17 at the time, was in Aspen, Colorado for the Winter X-Games. Compl, ¶¶ 13-14. On the night of January 17, 2017, Ms. Gehret went to Bootsy Bellows, a club in Aspen. Compl, ¶ 15. At Bootsy Bellows, Ms. Gehret was approached by Defendant Alon Alexander, who urged Ms. Gehret to join him at his table, where his brother, Defendant Oren Alexander, was also seated. Compl, ¶¶ 18-20. While Ms. Gehret was talking with Defendant Alon Alexander at his table, he gave her alcoholic drinks, which may have

1

also contained drugs. Compl, ¶ 25.

As the night continued, Defendant Alon Alexander kept his attention focused on Ms. Gehret, continually talking to her and touching her. Compl, ¶¶ 20-26. As the night continued, Ms. Gehret began to feel out of it, feeling hazing and limp and having difficulty holding her head up, as if she had been drugged. Compl, ¶ 29. At or near closing time of Bootsy Bellows, Defendants began talking about an after party at their residence, The Little Nell, and invited and ushered Ms. Gehret to that after party. Compl, ¶¶ 31-32.

The Defendants' residence at The Little Nell consisted of one room with two beds and a bathroom; there was no separate sitting area. Compl, ¶¶ 35-36. In the room at The Little Nell, Defendant Alon Alexander slid his hand down Ms. Gehret's pants and began to digitally penetrate her. Compl, ¶ 38. Ms. Gehret tried to stop Defendant Alon Alexander and told him she did not want to have sex with him. Compl, ¶ 39. Despite Ms. Gehret's protestations, Defendant Alon Alexander brought Ms. Gehret to the bathroom and shut and locked the door behind him. Compl, ¶ 40. In the bathroom, with Ms. Gehret back against the counter, Defendant Alon Alexander removed Ms. Gehret's clothes, digitally penetrated her in an even more violent manner than before, and then turned her around, pushed her up and down against the bathroom counter, and raped her, causing her to hemorrhage. Compl, ¶¶ 42-45. Defendant Alon Alexander then forced Ms. Gehret to shower and unlock her phone and then followed her on Instagram, messaging "hey babe" from her account to himself. Compl, ¶¶ 46-47.

The Federal Bureau of Investigations (FBI) launched an investigation regarding Defendants, indicating that over 40 women have been assaulted by either one or both of the Defendants. Compl, ¶¶ 54-55. On December 11, 2024, in the U.S. District Court for the Southern

District of New York, Defendants were indicated on multiple charges, including sex trafficking in violation of 18 U.S.C. § 1594(c), conspiracy to commit sex trafficking, and sex trafficking of a minor by force, fraud, or coercion in violation of 18 U.S.C. § 1591(a)(b)(1), (b)(2).

In December 2024, Plaintiff Maylen Gehret filed a claim against Defendants Alon and Oren Alexander, asserting claims of sexual assault and civil conspiracy against both Defendants. Defendants now ask this Court to stay the claims against Defendants until the criminal case, scheduled to begin on January 5, 2026, is heard. Plaintiff requests that this Court deny Defendants' Motion, as Defendants have no constitutional right to stay the proceedings. Ms. Gehret is not an identified victim in the superseding indictment nor identified as a FRE 404(b) witness. Moreover, because there is no guarantee that the criminal trial will begin on the scheduled date, as criminal trials can be delayed for multiple reasons and, if convicted, could result in the appellate process being activated, a stay would further delay Plaintiff's opportunity to seek justice. Alternatively, if this Court determines that a stay is appropriate, this Court should not stay the filing of any responsive pleading, other than an Answer to the Complaint, so that potential legal matters not implicating the Fifth and Sixth Amendments will not be delayed.

## **LEGAL STANDARD**

The Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights. *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1080 (10th Cir. 2009); *see also Ben Ezra Weinstein & Co., Inc. v. Am. Online, Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) ("When applying for a stay, a party must demonstrate a clear case of hardship or inequity.") (citations and quotation omitted).

When deciding whether the interests of justice require a stay, the court must be mindful of the extent to which a party's Fifth Amendment rights are implicated; potential advantages to one party or another arising from broader civil discovery rights; and potential exposure of the criminal defense strategy to the prosecution. *See Creative Consumer Concepts*, 563 F.3d at 1080-81. However, "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).

Courts in this District have considered the following factors when determining whether deferring a civil action in favor of a criminal one is appropriate: (1) the extent to which the issues in the civil and criminal cases overlap; (2) the status of the criminal case, including whether there has been an indictment; (3) the interests of, prejudices to, and burden on the plaintiff; (4) the interests of and burden on the defendant; (5) the interest of the court; and (6) the public interest. *See Nickal*, 2018 WL 1173150, at *2 (collecting cases); *Maxton v. United States*, 12-cv-00383-WYD-KMT, 2014 WL 5091972, at *4 (D. Colo. Oct. 10, 2014) (citing *AIG Life Ins. Co. v. Phillips*, No. 07-cv-00500-PSF-MEH, 2007 WL 2116383, at *2 (D. Colo. July 20, 2007)).

Whether to stay proceedings is a matter left to the sound discretion of the trial court. *Wang v. Hsu*, 919 F.2d 130, 130 (10th Cir. 1990). Indeed, the Federal Rules of Civil Procedure do not expressly provide for a stay of proceedings, but the power to stay "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kan. City S. Ry. Co. v. United States*, 282 U.S. 760, 763 (1931)).

# ARGUMENT

A. **The Motion to Stay Should be Denied Because While There is Some Overlap Between The Criminal Case and Plaintiff's Claims, The Overlap is Not Substantial and Defendants are Not Being Charged for Any Crimes Involving Plaintiff.**

Defendants argue that because there is substantial overlap between the superseding indictment **(Exhibit 1)** and Plaintiff's Complaint, that this factor weighs in favor of Defendants, thus the stay should be granted. While there may be some overlap between the Complaint and the indictment, such overlap does not merit granting a stay.

While there may be overlap between Plaintiff's allegations and the indictment, one has nothing to do with the other. To begin with, at the time Plaintiff filed her Complaint, neither she nor Plaintiff's counsel had read the December 11, 2024 indictment. Instead, Plaintiff's Complaint was based on her recollection of events as they happened to her, not to anyone else. Defendants' implication is that Plaintiff's Complaint is without merit and is, instead, based on "various, similar, iterations…made in other civil lawsuits, media reports, and the indictment". [ECF 23, at 2-3]. Given Plaintiff's lack of knowledge of the indictment, such an argument is simply without merit. Further, Defendants' claims of certain victims being "stalking horses for the FBI" is not relevant to this case as Ms. Gehret never offered to "quietly settle" her claims and has not sought to hide her identity in this litigation.

Any overlap between Plaintiff's Complaint and the facts in the indictment is due to the Defendants' consistent pattern of illegal conduct of meeting, drugging, and sexually assaulting women and nothing else. It is Defendants who consistently preyed on random women by chance. It is Defendants who consistently invited or lured women to parties or back to their rooms. It is Defendants who consistently drugged women. It is Defendants who consistently sexually

5

assaulted women. Consequently, it is the Defendants' actions that created the pattern, thus any resulting overlap between the indictment and the Complaint is a result of Defendants' own actions, and frankly, should be expected. And while the overlap should be expected, it should not be a basis for a Motion to Stay.

Finally, Defendants argue that they should be granted a Motion to Stay because the indictment's conspiracy allegations "are expressly not limited to the six unnamed women". However, Ms. Gehret is not an identified victim in the superseding indictment nor identified as a 404(b) witness. This is an important difference in this case versus the cases cited by Defendants in support of their Motion. In *SEC v. Nicholas*, 569 F. Supp. 2d 1065 (C.D. Cal.2008) and *Berreth v. Frazee*, No. 19-CV-00027-PAB-KMT, 2019 WL 10250759, Defendants in those cases were granted a stay because each Defendant had a criminal charge pending against them for the same case. Here, there is no pending criminal charge against Defendants on behalf of the Plaintiff.. As such, this should not be a factor in granting the Motion.

**B. The Motion to Stay Should be Denied Because The Status of Case Factor Merits Denying The Stay, as Criminal Cases are Delayed All the Time And, if Convicted, Could Result in Further Delay of Plaintiff's Claims Due to The Appellate Process.**

While courts may grant a civil stay where a criminal indictment has been handed down, there is no ruling or law that states a stay must be granted in a civil case when there is a criminal indictment – the stay is still optional. In this case, the indictment is not sufficient to grant a stay.

The Speedy Trial Act requires that a criminal trial begin no more than seventy days after the filing of an indictment or the defendant's first appearance in court. 18 U.S.C. § 3161(c)(1). The purpose of the Act is to "to protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings." *United*

*States v. Toombs,* 574 F.3d 1262, 1268 (10th Cir. 2009) (quoting *United States v. Thompson,* 524 F.3d 1126, 1131 (10th Cir. 2008)). But not every day counts towards the seventy-day limit because of a multitude of statutory exclusions, 18 U.S.C. § 3161(g), including, for example, (1) any "delay resulting from any pretrial motion," from the day of its filing to the day of disposition, *id.* § 3161(h)(1)(D), and (2) any "delay resulting from consideration by the court of a proposed plea agreement," *id.* § 3161(h)(1)(G).

As this Court knows, a set trial date does not mean that the trial will be held on that day. Cases, including criminal cases, are delayed or continued all the time for a variety of reasons. A new issue could arise that requires additional discovery and thus would result in delaying the trial. The parties may attempt to negotiate a plea deal, thereby pushing back the trial date if they are unable to reach an acceptable solution. Defendants themselves may move for a continuance as the trial draws closer.

Beyond the usual legal events that can delay a trial, the Speedy Trial Act also has a ends-of-justice exclusion which states, "The ends of justice will be served by taking such action which outweighs the best interest of the public and the defendant in a speedy trial pursuant to [18 U.S.C. § 3161(h)(7)(A) ]." *Toombs*, 5472 F.3d at 1269. Under this exclusion, the court has discretion to delay the case should it feel it necessary. Should that happen, for whatever reason, it could result in more litigation about whether the end-of-justice exclusion is merited, thus further delaying Plaintiff's case.

A criminal indictment is one factor involved in determining whether to stay a case, but it is not the only factor. Pretrial motions and other common legal events routinely delay trials. And, as noted by Defendants, this case has received a lot of notoriety and it is foreseeable that other

7

events may arise that result in a continuation of the criminal trial. Moreover, should Defendants lose their criminal trial, the appellate process would necessarily follow, further hampering and delaying Plaintiff's right to bring her claims against Defendants.

### C. The Motion to Stay Should Be Denied Because It Undermines Plaintiff's Interest in Seeking Justice Against Defendants in An Expeditious Manner.

A plaintiff has an interest in the "expeditious resolution" of their case. *Trs. Of Plumbers & Pipefitters Nat. Pension Fund v. Transworld Mech. Inc.,* 886 F.Supp. 1134, 1140 (S.D.N.Y. 1995). While Plaintiff's claims are based on facts that occurred eight years ago, that does not mean these claims are without merit as Defendants imply.

Plaintiff was 17 years old at the time Defendants preyed on her and raped her in January 2017. Because she was a minor at that time, her statute of limitations did not begin to run until February 2017 when she turned 18 and would not expire until February 2023. However, in 2021, Colorado Senate Bill 21-088, known as the Colorado Child Sexual Abuse Accountability Act, Colo. Rev. Stat. § 13-20-1201 *et seq.* (CSAAA) was enacted, extending the time for sexual abuse survivors from January 1, 1960 to January 1, 2022 to file claims until January 1, 2025. Plaintiff timely filed her claim in December 2024. This is mere months after her original statute of limitations expired, a far cry from the "significant delay" Defendants erroneously claim. Plaintiff is not pursuing this case as "an opportunistic interest in exploiting the indicted Defendants' vulnerable legal and custodial positions." [ECF 23, at 9-10]. To the contrary, she is seeking justice for Defendants' opportunistic and exploitive acts against her.

### D. The Motion to Stay Should be Denied Because It Does Not Hamper The Interests of Defendants, as Defendants Can Still Participate in Their Defense And Could Hire Local Counsel to Assist in Their Preparation.

While Defendants may face challenges preparing for a civil case while also facing

criminal charges, that is hardly sufficient to grant a stay in this case. Defendants allege it is "impossible" for them to "meaningfully participate in this case" because they are detained in a facility 1,786 miles from Denver. [ECF 23, at 10]. However, it was Defendants' choice to retain *private and experienced* counsel that is located 1,786 miles from where they are currently detained, not Plaintiff's. Defendants could have chosen equally qualified counsel who resided much closer to where they are detained, or at the least hired local co-counsel who could assist in the preparation.

Surely Defendants' and their counsel were aware of the 1,786 miles between them and Defendants when they signed Defendants as clients. Yet despite the awareness of the distance beforehand, Defendants are now using that as an excuse of why they need a stay. If Defendants truly believed that the distance between them and counsel did not allow them to meaningfully participate in their defense, then they should have hired local counsel to assist in their preparation. Instead, they made the choices they did and now expect Plaintiff to also deal with the fallout of their choices by seeking a stay on these proceedings. Defendants should not be rewarded, and Plaintiff punished, for their choices. [1]

E. **The Motion to Stay Should be Denied Because the Best Interests of the Court is Served by Moving Forward with The Claims, as There is A Lot of Uncertainty as to When The Criminal Trial Will Commence.**

On the one hand, "[t]he Court has a strong interest in keeping litigation moving to conclusion without unnecessary delay." *In re CFS-Related Securities Fraud Litigation*, 256 F.Supp.2d 1227, 1241 (N.D. Okla. 2003). On the other hand, resolution of the criminal case may

---

[1] Jeffrey Pagliuca, with one of his partners Laura Menninger, also effectively represented Ghislane Maxwell at the same distance. https://www.9news.com/article/news/crime/ghislaine-maxwell-lawyers-sue/73-02b12587-8e97-4bf4-94f4-493d0ee68bf5; https://people.com/crime/judge-orders-to-unseal-documents-in-2015-ghislaine-maxwell-case/.

9

(1) increase the possibility of settlement of the civil case, and (2) "may reduce the scope of discovery in the civil case [as] the evidence gathered during the criminal prosecution can later be used in the civil action." *Transworld*, 886 F.Supp. at 1140.

While resolution of the criminal case is one factor that determines a court's interest in granting a motion to stay, there is still a lot of uncertainty as to when the criminal proceedings will conclude, as discussed above. There is uncertainty as to whether other superseding indictments will come down between now and trial; uncertainty as to whether there will be new motions that will result in a need to delay the trial; uncertainty as to whether there will be plea negotiations that delay the trial; uncertainty as to whether conviction will result in the appellate process and thus delay any civil proceedings. There are far too many unknowns that could impact whether the trial will occur in January 2026 or not, as well as prolonged appeals should Defendants be convicted. All this uncertainly merits against granting a stay.

### F. The Motion to Stay Should be Denied Because The Public Interest is Best Served by the Expeditious Resolution of Plaintiff's Claims.

Fed. R. Civ. P. 1 requires that the federal rules of civil procedure, including Rule 26(c), "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Accordingly, the public has an interest in the just and efficient resolution of cases. *Obispo v. Ishkiret's Grp., LLC*, No. CIV-24-889-D, 2024 WL 5056643 at *4 (W.D. Okla. Dec. 10. 2024). Given the seriousness of the nature of the allegations against Defendants, it is in the best interest of the public that this case move forward now, especially as the criminal case has the potential to be drawn out by many factors, including potentially the appellate process.

G. **Should the Court Grant Defendants' Motion, then Plaintiff Requests that this Court Order Responsive Pleadings to be Filed by Defendants.**

If the Court is inclined to grant Defendants' Stay, then Plaintiff requests that this Court still order Defendants to file responsive pleadings. Any responsive pleadings would not implicate Defendants' Fifth or Sixth Amendment rights, outside an Answer which, at best, *might* implicate Fifth and Sixth Amendment rights. As shown by other claims brought against Defendants for similar assaults, Defendants' modus operandi is to file a Motion to Dismiss in response to the lawsuit. **Exhibit 2,** Memorandum in Support of Motion to Dismiss Parker Complaint; **Exhibit 3,** Memorandum in Support of Motion to Dismiss Mandel Complaint; **Exhibit 4,** Memorandum in Support of Motion to Dismiss Doe Complaint.   Plaintiff anticipates that Defendants will do the same in this case.  As Defendants have filed these Motions to Dismiss in the past, clearly they do not have any concerns about their Constitutional rights in such responsive pleadings. For this reason, Plaintiff requests that this Court order Defendants to file any and all other responsive pleadings within three weeks of any Order granting their motion to Stay.

## **CONCLUSION**

Defendants are asking this Court to stay the claims against them until after their criminal trial in January 2026. While a trial date may be set for January 2026, there is no guarantee that the trial will go forward on that date, as trials are continued for many reasons, both foreseeable and unforeseeable. Given this, staying these proceedings does not serve the Plaintiff's interests, the Court's interest, or the public's interest. Instead, it serves only the Defendants' interests. As Defendants are not charged with any crimes in connection with Plaintiff, this is not a basis for staying the claims. For these reasons, Plaintiff requests that this Court deny Defendants' Request for a stay. Should the Court grant the Stay, then Plaintiff requests that this Court require the

Defendants to file any and all other responsive pleadings, other than an Answer, within 21 days of its Order on the Motion to Stay.

Respectfully submitted this 30th day of May, 2025.

                                    LEVENTHAL PUGA BRALEY P.C.

                            By:    */s/ Julia T. Thompson*
                                      Jim Leventhal, #5815
                                      Julia T. Thompson, #25897
                                      Leventhal Puga Braley P.C.
                                      950 South Cherry Street, Suite 600
                                      Denver, Colorado 80246
                                      Telephone: (303) 759-9945
                                      Facsimile: (720) 773-8581
                                      **Attorneys for Plaintiff**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing pleading was served on counsel via the ECF filing system:

Jacob McMahon
Jeffrey Pagliuca
Haddon Morgan and
Foreman PC
945 North Pennsylvania St.
Denver, CO 80203
Telephone: 303-831-7364
***Attorneys for Defendants***
***Oren and Alon Alexander***

      */s/ Jessica Sanchez*
      Legal Assistant